IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
Case No. 7:20-cv-00150-M

STAFFING ADVANTAGE LLC,    )
    )
    Plaintiff,    )
    )    **OPINION**
v.    )    **AND ORDER**
    )
 DEFINITIVE STAFFING SOLUTIONS,    )
INC.,    )
    )
    Defendant.    )

This matter comes before the court on Plaintiff Staffing Advantage LLC's motion to dismiss Defendant Definitive Staffing Solutions, Inc.'s countercomplaint,[1] filed on December 14, 2020. [DE-14] For the reasons that follow, Plaintiff's motion is GRANTED.

## I.    Background

Defendant's countercomplaint alleges as follows: the parties entered into an Affiliation Agreement (the "Agreement") in November 2015 in which Plaintiff agreed to provide certain services (including the provision of worker's-compensation-insurance coverage) to Defendant in exchange for fees. [DE-11 at 16; DE-11-2[2]] The Agreement also set forth that Defendant was obligated to provide Plaintiff with certain

---

[1] Within this opinion, the court refers to Plaintiff and Defendant as such even though Defendant is also the counter-plaintiff and Plaintiff the counter-defendant for purposes of Defendant's counterclaims.

[2] Without converting a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss to a Federal Rule of Civil Procedure 56 motion for summary judgment, the court may consider extrinsic evidence attached by Defendant to its countercomplaint. Fed. R. Civ. P. 12(d) (conversion required when "matters outside the pleadings are presented to and not excluded by the court"); *O.T. Pickell Builders v. Witowski*, No. 96 C 4233, 1998 U.S. Dist. LEXIS 14936, at *5 (N.D. Ill. Sept. 16, 1998) ("counterclaims are pleadings . . . subject to all of the pleadings requirements of the Federal Rules of Civil Procedure"); *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) ("when

1

information to properly facilitate Plaintiff's provision of worker's-compensation-insurance coverage [DE-11-2 ¶ VI.D] and that Plaintiff was obligated to provide Defendant with certificates demonstrating worker's-compensation-insurance coverage which Defendant could forward to its customers [DE-11 at 17; DE-11-2 ¶ III.D.5]. The parties started working together pursuant to the Agreement in late 2015 and continued doing so until Defendant terminated the Agreement in January 2017. [DE-11 at 17–18]

In October and November 2016, Plaintiff sent Defendant insurance certificates that, unlike previous certificates, did not list Defendant as covered by Plaintiff's policy. [DE-11 at 17–18] Defendant's President James Pinedo contacted Plaintiff's member-manager Randal Gore in December 2016 and asked why Defendant was not listed as covered on the certificates, and Gore allegedly "evaded Mr. Pinedo's inquiries . . . and told Mr. Pinedo not to worry about it and that he would take care of it." [DE-11 at 18] Defendant terminated the Agreement one month later in January 2017 because of Plaintiff's purported "failure to address the Certificates" and other issues. [DE-11 at 18] Defendant alleges that it was not listed as covered on the certificates because Plaintiff stopped covering Defendant under its policy by October 2016. [DE-11 at 18]

The parties thereafter began litigating over the Agreement. Defendant brought a number of claims against Plaintiff (and others) in this court in October 2018, including claims for breach of contract, declaratory judgment, and unfair and deceptive trade practices within the meaning of N.C. Gen. Stat. § 75-1.1. *See Definitive Staffing Sols., Inc. v. Staffing Advantage, L.L.C.*, No. 7:18-CV-187-FL (E.D.N.C.) (the "First Litigation") at [DE-1 (first complaint filed October 15, 2018); DE-17 (amended complaint filed

_____

a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the documents attached or incorporated into the complaint" (internal quotation marks and citations omitted)).

2

January 8, 2019)]. The First Litigation settled pursuant to a settlement agreement, *see id.* at [DE-41 (January 23, 2020 stipulation of voluntary dismissal with prejudice in consideration of negotiated settlement agreement)], which Plaintiff attached to its motion to dismiss in this case [DE-15-1].[3]

Plaintiff filed the complaint in this case on August 17, 2020. [DE-1] Within the complaint, Plaintiff brings a number of claims against Defendant generally alleging that Defendant failed to provide Plaintiff with accurate information necessary to properly facilitate Plaintiff's provision of worker's-compensation insurance. [DE-1] On November 11, 2020, Defendant answered the complaint and brought counterclaims against Plaintiff for: (1) breach of contract; (2) declaratory judgment; (3) unfair and deceptive trade practices within the meaning of N.C. Gen. Stat. § 75-1.1; and (4) unjust enrichment/*quantum meruit*. [DE-11] Plaintiff moved to dismiss Defendant's counterclaims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (hereinafter, e.g., "Rule 12(b)(1)") on December 14, 2020. [DE-14] Plaintiff's motion to dismiss has been fully briefed by the parties [*see* DE-15; DE-18; DE-23] and is ripe for adjudication.

## II. Legal standards

### a. Rule 12(b)(1)

The Supreme Court has said:

> Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial

---

[3] The court properly considers Defendant's claims brought against Plaintiff and voluntarily dismissed in the First Litigation at this stage, since they are subject to judicial notice. *See* Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *Zak*, 780 F.3d at 607 ("courts are permitted to consider facts and documents subject to judicial notice without converting the motion to dismiss into one for summary judgment"). The court also properly considers the First Litigation's settlement agreement—whose authenticity Defendant does not contest [*see* DE-18 at 14–16]—in adjudicating Plaintiff's Rule 12(b)(1) motion to dismiss Defendant's declaratory-judgment claim. *See Evans, infra* (district courts may properly consider evidence outside the pleadings in adjudicating Rule 12(b)(1) challenges).

3

decree. It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). A defendant against whom a claim has been brought can move the court to dismiss the claim by arguing that the complaint fails to properly invoke the court's subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1).

When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. The district court should grant the Rule 12(b)(1) motion to dismiss only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.

*Evans v. B. F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (internal quotation marks and citations omitted). Where a settlement agreement has previously disposed of a claim, the claim is moot, courts lack subject-matter jurisdiction over the claim, and a Rule 12(b)(1) motion invoking the settlement agreement must be granted. *See Hart v. United Debt Holdings, LLC*, Civil Action No. 5:15-cv-00052, 2016 U.S. Dist. LEXIS 51485, at \*7 (W.D. Va. Apr. 18, 2016) (considering previous settlement agreement on Rule 12(b)(1) motion challenging subject-matter jurisdiction, granting motion, and dismissing case with prejudice).

    *b.  Rule 12(b)(6)*

Federal Rule of Civil Procedure 8 ("Rule 8") requires a pleading to contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A defendant against whom a claim has been brought can challenge the claim's sufficiency under Rule 8 by moving the court to dismiss the claim for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6).

When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all of the well-pleaded factual allegations contained within the complaint and must draw all reasonable inferences in the plaintiff's favor, *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017), but any legal conclusions

4

proffered by the plaintiff need not be accepted as true, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

To survive a Rule 12(b)(6) motion, a plaintiff's well-pleaded factual allegations, accepted as true, must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *Twombly*'s plausibility standard requires that a plaintiff's well-pleaded factual allegations "be enough to raise a right to relief above the speculative level," i.e., allege "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Id.* at 555–56. A speculative claim resting upon conclusory allegations without sufficient factual enhancement cannot survive a Rule 12(b)(6) challenge. *Iqbal*, 556 U.S. at 678–79 ("where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'--'that the pleader is entitled to relief.'" (quoting Fed. R. Civ. P. 8(a)(2)); *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) ("'naked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" (quoting *Twombly*, 550 U.S. at 557)).

The Fourth Circuit has said:

> [A] motion to dismiss filed under Federal Rule of [Civil] Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred. But in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6). This principle only applies, however, if all facts necessary to the affirmative defense clearly appear on the face of the complaint.

*Goodman v. PraxAir, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (internal quotation marks, brackets, emphasis, and citation omitted).

### III.     Analysis

Plaintiff challenges each of Defendant's counterclaims under Rule 12(b)(6) as untimely under the applicable statutes of limitations.  Plaintiff also invokes the First Litigation's settlement agreement in challenging Defendant's counterclaim seeking a declaratory judgment under Rule 12(b)(1).  The court addresses each of Defendant's counterclaims in turn.

#### a.   *Breach of contract*

Defendant's first counterclaim alleges that Plaintiff breached the Agreement.  [DE-11 at 19–20] Plaintiff argues that Defendant's breach-of-contract counterclaim must be dismissed under Rule 12(b)(6) as untimely.  [DE-15 at 5]

The parties agree that North Carolina law governs the Agreement[4] and that N.C. Gen. Stat. § 1-52(1) is North Carolina's statute of limitations governing breach-of-contract claims like Defendant's counterclaim.  [DE-15 at 5; DE-18 at 5]  N.C. Gen. Stat. § 1-52(1) generally requires a litigant to bring a breach-of-contract claim within three years of the time that the claim accrues, which North Carolina courts have said takes place when the claimant has "notice of the breach[.]"  *Henlajon, Inc. v. Branch Highways, Inc.*, 149 N.C. App. 329, 335, 560 S.E.2d 598, 603 (2002).

---

[4] Under the *Erie* doctrine, a federal court sitting in diversity applies (1) the substantive law of the state in which it sits and (2) federal procedural law. *See Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78–79 (1938).  In diversity cases, federal courts look to state law to determine both the applicable statute of limitations and the time at which a claim accrues under the applicable statute of limitations. *See Brown v. Am. Broad. Co.*, 704 F.2d 1296, 1299 (4th Cir. 1983).

6

Within its breach-of-contract counterclaim, Defendant alleges that Plaintiff breached the Agreement by "failing to provide workers' compensation coverage for [Defendant] and the employees [Defendant] placed with its customers[.]"[5] [DE-11 at 19] However, Defendant's countercomplaint specifically alleges that it: (1) discovered that Plaintiff's insurance certificates stopped listing Defendant as covered "in or about September to October 2016," at which point Defendant alleges that it "was not covered by [Plaintiff]'s policy"; (2) brought the insurance-coverage issue to Plaintiff's attention in December 2016, at which point Plaintiff's member-manager Gore acknowledged the issue and said that he would take care of it; and (3) terminated the Agreement in "about January 2017" based in part upon the fact that the certificates no longer listed Defendant as covered under Plaintiff's policy. [DE-11 at 17–18] Accepting Defendant's allegations as true as required on a Rule 12(b)(6) challenge, *see Twombly*, 550 U.S. at 570, the court concludes that the Agreement could not have been breached after January 2017, when the Agreement was terminated and therefore no longer obligated either party to do anything. Because Defendant's countercomplaint was not filed until November 2020—more than three years after Defendant alleges that the Agreement was terminated based upon its suspicions that Plaintiff had breached the Agreement— Defendant's breach-of-contract counterclaim must be dismissed as untimely pursuant to N.C. Gen. Stat. § 1-52(1) and Rule 12(b)(6).

Defendant raises several arguments seeking to avoid this result. First, Defendant argues that the so-called continuing-wrong doctrine "pushes the earliest possible start date for the running of the statute of limitations on [Defendant]'s Counterclaims to January 31, 2017." [DE-18 at 7] But since: (1) a January

---

[5] Defendant also alleges that Plaintiff breached the Agreement "in such other and further ways as may be determined at trial" [DE-11 at 19], but this is not an allegation of any breach, let alone a plausible allegation within the meaning of *Twombly* that can survive Defendant's Rule 12(b)(6) challenge. *Twombly*, 550 U.S. at 555–56 (a plaintiff's well-pleaded factual allegations must "be enough to raise a right to relief above the speculative level," i.e., allege "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct].").

2017 accrual date would not save Defendant's breach-of-contract counterclaim; and (2) Plaintiff did no wrong by failing to provide Defendant with insurance coverage after Defendant terminated their Agreement in January 2017, Defendant's continuing-wrong argument does not change the court's conclusion.

Second, Defendant argues that the so-called discovery rule saves its counterclaim. Defendant argues that it never has conclusively determined whether it lost coverage during the duration of the Agreement, and therefore has never discovered any breach:

> The only way for [Defendant] to independently discover if it was covered by [Plaintiff]'s insurance policy would have been if the insurer denied a workers' compensation insurance claim filed for an injured [Defendant] employee based on a lack of coverage between October 2016 and January 2017. However, no workers' compensation claims involving injured [Defendant]'s employees were filed during that time period.
>
> . . . [Defendant] has still been unable to determine whether it and its employees were actually covered by [Plaintiff]'s insurance policy. [W]hile the certificates suggest that [Plaintiff] might not have been providing workers' compensation insurance to [Defendant] from October 2016 through January 2017, the only way for [Defendant] to "discover" that fact under the circumstances, was to assert its Counterclaims against [Plaintiff]. Consequently, the statute of limitations has not yet run on any of [Defendant]'s Counterclaims.

[DE-18 at 9] In essence, then, Defendant takes the position that: (1) it is not sure that Plaintiff breached the Agreement by dropping Defendant from its insurance policy; and (2) because it is not sure, it cannot have discovered its counterclaim sufficient to trigger the limitations period under N.C. Gen. Stat. § 1-52(1).

Although Defendant raises a number of legal standards that do not apply here [*see* DE-18 at 7–8],[6] it also raises *Henlajon* for the proposition that a North Carolina breach-of-contract claim "accrues at the

---

[6] In support of its discovery-rule argument, Defendant invokes case law discussing the discovery rules applicable to: (1) personal-injury claims, *see Misenheimer v. Burris*, 360 N.C. 620, 622–26 (2006) (applying the discovery rule for latent personal injuries described by N.C. Gen. Stat. § 1-52(16)); and (2) N.C. Gen. Stat. § 75-1.1 claims based upon purported fraud, *see Dreamstreet Invs., Inc. v. MidCountry Bank*, 842 F.3d 825, 830 (4th Cir. 2016) (discussing the "discovered or should have discovered with the exercise of reasonable diligence" standard applicable for fraud-based claims). But since Defendant has alleged neither personal injury nor fraud, these cases and the standards they discuss are inapposite here.

8

time of notice of the breach[.]" 149 N.C. App. at 335, 560 S.E.2d at 603. But Defendant fails to grasp that the notice necessary to trigger the limitations period is provided by knowledge of facts tending to demonstrate that a breach might have occurred, not by certainty that legal liability lies. *See Alejandro-Ortiz v. P.R. Elec. Power Auth.*, 756 F.3d 23, 27 (1st Cir. 2014) ("the plaintiff, while not having actual knowledge, is deemed to be on notice of her cause of action if she is aware of certain facts that, with the exercise of due diligence, should lead her to acquire actual knowledge of her cause of action"); *Brown v. Lattimore Living Tr.*, 264 N.C. App. 682, 687, 826 S.E.2d 827, 831 (2019) ("We are not persuaded by plaintiffs' assertion that they are entitled to determine what constitutes a reasonable amount of time and thereby independently determine when a breach of contract occurs."). Once a litigant has knowledge of sufficient facts tending to demonstrate that a claim could be brought, the litigant's failure to bring that claim within the limitations period is fatal thereto. *Christenbury Eye Ctr., P.A. v. Medflow, Inc.*, 370 N.C. 1, 6–7, 802 S.E.2d 888, 892 (2017) (affirming dismissal of breach-of-contract action because "plaintiff's complaint reveals that it had notice of its injury" outside of the limitations period, and that "[b]ecause plaintiff had notice of its injury yet failed to assert its rights, all of plaintiff's claims are time barred").

As mentioned above, Defendant alleges that it: (1) discovered that Plaintiff's insurance certificates stopped listing Defendant as covered "in or about September to October 2016," at which point Defendant alleges that it "was not covered by [Plaintiff]'s policy"; (2) brought the insurance-coverage issue to Plaintiff's attention in December 2016, at which point Plaintiff's member-manager Gore acknowledged the issue and said that he would take care of it; and (3) terminated the Agreement in "about January 2017" based in part upon the fact that the certificates no longer listed Defendant as covered under Plaintiff's policy. [DE-11 at 17–18] The court concludes that these alleged facts comprise a non-speculative claim that Plaintiff had breached the Agreement by October 2016, i.e., provide "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct,]" *Twombly*, 550 U.S. at 570, under North

9

Carolina law.[7] And because Defendant alleges that it had notice of these facts by January 2017—when the breach-of-contract counterclaim it seeks to bring would have been as ripe as it is today, since Defendant does not allege or meaningfully argue that it learned any new facts necessary or material to the claim after January 2017[8]—the court concludes that Defendant had "notice of the breach" within the meaning of *Henlajon* at that time. As Defendant notes, one "way for [Defendant] to 'discover' [whether a breach had occurred] was to assert its Counterclaims against [Plaintiff]." [DE-18 at 9] But because it had notice of the breach in January 2017 yet failed to assert its claim until November 2020, Defendant "had notice of its

---

[7] Defendant concedes that it has never had a claim denied by Plaintiff's insurer, and thus has not suffered any actual damages from the alleged breach. [*see* DE-11 at 19 ("*if a workers' compensation claim had arisen*, the employee *would have been* denied coverage because [Plaintiff]'s workers' compensation insurance policy did not cover [Defendant] or employees that were placed with [Defendant]'s customers." (emphasis added)); DE-15 at 9 ("no workers' compensation claims involving injured [Defendant]'s employees were filed during [the] time period" when Defendant alleges Plaintiff was in breach of the Agreement)] While as discussed below in Section III(c), Defendant's failure to allege actual damages is fatal to its N.C. Gen. Stat. § 75-1.1 counterclaim—of which "actual injury" is an element that must be pleaded—North Carolina case law stands for the proposition that actual damages resulting from the alleged breach is not an element of a breach-of-contract claim that must be pleaded. *See Cummings v. Carroll*, 270 N.C. App. 204, 227, 841 S.E.2d 555, 572 (2020) ("The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." (quotation marks and citation omitted)); *Crescent Univ. City Venture, LLC v. AP Atl., Inc.*, 15 CVS 14745, 2019 NCBC LEXIS 46, at *127 (N.C. Super. Ct. Aug. 8, 2019) ("Under North Carolina law, proof of damages is not an element of a claim for breach of contract. . . . A claimant who establishes the elements of a breach of contract is entitled 'to nominal damages at least.'" (quoting *Bryan Builders Supply v. Midyette*, 274 N.C 264, 271, 162 S.E.2d 507, 511–12 (1968)). This court has followed *Bryan Builders* in declining to dismiss breach-of-contract claims where actual damages have not been alleged. *See Prime Commc'ns, L.P. v. Ragsdale Liggett, PLLC*, No. 5:19-CV-238-FL, 2019 U.S. Dist. LEXIS 188946, at *14–16 (E.D.N.C. Oct. 31, 2019) ("where plaintiff alleges a breach of the obligation to use best efforts, plaintiff's breach of contract claim must proceed at least on the basis of nominal damages"). Following these cases, the court concludes that Defendant's breach-of-contract counterclaim is well-pled and would have survived Plaintiff's Rule 12(b)(6) challenge as plausible within the meaning of *Twombly* but for the statute of limitations.

[8] Although Defendant argues that "the parties could not fully litigate claims relating to workers' compensation insurance until the conclusion of" a lawsuit between Plaintiff and its insurer [DE-18 at 2, 13–14 (describing the "Insurer Action")], Defendant does not explain why the conclusion of another lawsuit was necessary before Defendant could sue Plaintiff for not providing insurance coverage, and the court will not speculate on that score.

injury yet failed to assert its rights" within the limitations period, which is fatal to the claim. *Christenbury*, 370 N.C. at 6–7, 802 S.E.2d at 892. The court accordingly rejects Defendant's discovery-rule argument.[9]

Defendant next argues that equitable estoppel bars Plaintiff from contesting its breach-of-contract counterclaim on statute-of-limitations grounds. Under North Carolina law, "[e]quitable estoppel arises when one party, by his acts, representations, or silence when he should speak, intentionally, or through culpable negligence, induces a person to believe certain facts exist, and that person reasonably relies on and acts on those beliefs to his detriment." *Gore v. Myrtle/Mueller*, 362 N.C. 27, 33, 653 S.E.2d 400, 405 (2007); *see Overstreet v. Kentucky Cent. Life Ins. Co.*, 950 F.2d 931, 938 (4th Cir. 1991) (applying state equitable-estoppel law in diversity action). Defendant argues that, in reliance upon Plaintiff's member-manager Gore's December 2016 statement that "he would take care of" the insurance-coverage issue [*see* DE-11 at 18], Defendant "abandoned its inquiry, taking Mr. Gore at his word" [DE-18 at 12]. But Defendant's countercomplaint alleges that, rather than relying upon Gore's statement, Defendant turned around a month later and terminated the Agreement because of, among other things, the insurance-coverage issue. [DE-11 at 18 (alleging that Defendant "continued its business relationship with [Plaintiff] until about January 2017, when [Defendant] ended the parties' affiliation due to [Plaintiff]'s failure to address the Certificates")] To the extent that it relied upon the statement for a month, Defendant has not alleged or argued that any such reliance was detrimental; indeed, the court takes judicial notice of the fact that Defendant sued Plaintiff for other issues arising out of the Agreement within the limitations period, showing

---

[9] The court agrees with Plaintiff that Defendant is impermissibly trying to "have it both ways" with its discovery-rule argument. [*see* DE-23 at 2] If the court were to conclude that the above-mentioned facts were insufficient to provide Defendant with notice that Plaintiff had breached the Agreement, then the court would conclude that Defendant's breach-of-contract counterclaim based thereupon is impermissibly speculative, and would dismiss it under *Twombly*. 550 U.S. at 570 (plaintiff's well-pleaded factual allegations must "be enough to raise a right to relief above the speculative level"). Regardless of the court's conclusion, then, Defendant's discovery-rule argument fails to save Defendant's breach-of-contract counterclaim.

11

that had Defendant wished to bring claims based upon a lack of insurance coverage, it had ample opportunity to do so, but did not. First Litigation at [DE-1 (first complaint filed October 15, 2018)]. In sum, because Defendant's countercomplaint belies its equitable-estoppel argument, the court rejects the argument.

Finally, Defendant argues that its counterclaim should be resurrected by the doctrine of equitable tolling. [DE-18 at 13–14] In *Aikens v. Ingram*, 524 F. App'x 873 (4th Cir. 2013) (unpublished), the Fourth Circuit noted that North Carolina had "no controlling decision addressing equitable tolling"[10] but concluded that North Carolina's courts would apply equitable tolling where: (1) the defendant has received timely notice of the time-barred claim; (2) the defendant would not be prejudiced by the delay in the litigation; and (3) the plaintiff has acted with diligence in bringing the claim, a calculus which the *Aikens* court derived from the Supreme Court's decision in *Burnett v. New York Central Railroad Company*, 380 U.S. 424, 429–30 (1965). *Aikens*, 524 F. App'x at 879–83. Defendant argues that equitable tolling applies because: (1) the First Litigation settlement agreement carves out claims and defenses related to worker's-compensation-based claims, which demonstrates that Plaintiff was aware that Defendant might bring such claims in the future and would not be prejudiced thereby; and (2) Defendant "acted with diligence by bringing its workers' compensation claims as soon as it was practicable to do so." [DE-18 at 14]

The court first notes that the First Litigation settlement agreement is entirely silent as to the tolling of any statutes of limitations. [*see* DE-15-1] The carveout therein invoked by Defendant therefore cannot be reasonably read as an agreement by Plaintiff to toll the limitations period, but rather as a reservation of rights to sue and be sued on certain claims for purposes of the doctrines of *res judicata* and collateral

---

[10] The court's independent research has uncovered no North Carolina case law issued since *Aikens* that clarifies the question of whether equitable tolling is in fact available under North Carolina law.

estoppel. *See Gaston Cnty. Dyeing Mach. Co. v. Northfield Ins. Co.*, 351 N.C. 293, 300, 524 S.E.2d 558, 563 (2000) ("the courts must enforce the contract as written; they may not . . . rewrite the contract or impose liabilities on the parties not bargained for and found therein"); *cf. Charlotte Motor Speedway, Inc. v. Tindall Corp.*, 195 N.C. App. 296, 301–02, 672 S.E.2d 691, 694–95 (2009) (enforcing agreement expressly tolling statute of limitations). While Defendant is not arguing that the parties agreed to any tolling, the fact that the parties expressly agreed to reserve rights regarding the worker's-compensation-based claims but did not agree to toll the limitations period applicable thereto makes the court hesitant to employ equity to imply such a term. *See Gaston*, *supra*; *Innovative Sales LLC v. Northwood Mfg.*, No. 07-30598, 2008 U.S. App. LEXIS 16930, at *10 (5th Cir. Aug. 6, 2008) (unpublished) ("an experienced dealer . . . cannot reasonably expect equity to supply terms . . . to which the parties never agreed").

Applying *Burnett*, the court concludes that equitable tolling is inapplicable because Defendant was not diligent in bringing its counterclaim. When Defendant sued Plaintiff for breach of the Agreement in the First Litigation, Defendant did not make any allegations that Plaintiff had failed to provide insurance coverage to Defendant. *See* First Litigation at [DE-1 (first complaint); DE-17 (amended complaint)] Defendant failed to bring any claims against Plaintiff regarding insurance coverage in the First Litigation despite knowing the same facts at the time it filed its complaints in that case that it alleges in support of its breach-of-contract counterclaim in this case.[11] Thus, had Defendant wished to pursue its right to sue based upon the alleged lack of insurance coverage, it could have brought claims concerning coverage in its prior lawsuit—or at any other time within the three-year period following its notice of the alleged breach—but did not. Additionally, Defendant waited the better part of a year to bring its counterclaims following the settlement of the lawsuit whose conclusion Defendant argues was necessary before its claims could be

---

[11] *See supra* note 8.

13

brought. [DE-18 at 13 ("According to [Plaintiff]'s Complaint in this case, the Insurer Action . . . concluded on or about March 9, 2020")] Defendant's delay demonstrates a lack of diligence within the meaning of *Burnett* and requires that Defendant's invocation of equity be rejected. *See Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984) ("One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence."). Because the court concludes that Defendant was not diligent in bringing its worker's-compensation-based breach-of-contract counterclaim, the court rejects Defendant's equitable-tolling argument.

There is one additional point that bears emphasis. In seeking equitable tolling, Defendant argues:

> Given these circumstances, it would be inequitable to grant [Plaintiff]'s Motion to Dismiss but allow [Plaintiff] at the same time to pursue its workers' compensation claims when, at [Plaintiff]'s insistence, the parties agreed in October 2019 that they would litigate any claims arising from or relating to workers' compensation in the future.

[DE-18 at 14] As a threshold matter, this argument stumbles out of the gate because: (1) Defendant has not moved to dismiss any of Plaintiff's claims, meaning that the court has no occasion to decide whether to allow or disallow any of those claims; and (2) Plaintiff brought its claims at an earlier time than Defendant brought its counterclaims, which is not without significance. But regardless, the court wishes to point out that the fact that Defendant's breach-of-contract counterclaim will be dismissed does not mean that Defendant will be unable to establish that it was not covered by Plaintiff's insurance policy as an affirmative defense to Plaintiff's own breach-of-contract claim, since defenses—unlike causes of action—cannot be time-barred by statutes of limitations. *See United States v. Western Pac. R.R. Co.*, 352 U.S. 59, 72 (1956) ("To use the statute of limitations to cut off the consideration of a particular defense in the case is quite foreign to the policy of preventing the commencement of stale litigation. We think it would be incongruous to hold that once a lawsuit is properly before the court, decision must be made without consideration of all the issues in the case and without the benefit of all the applicable law. If this litigation is not stale, then no

14

issue in it can be deemed stale"); *City of Saint Paul v. Evans*, 344 F.3d 1029, 1033 (9th Cir. 2003) ("a statute

of limitations should be used only as a shield, not a sword. Indeed, courts generally allow defendants to

raise defenses that, if raised as claims, would be time-barred." (citations omitted)); *Luckenbach S.S. Co. v.*

*United States*, 312 F.2d 545, 549 (2d Cir. 1963) ("Non-liability for which plaintiff seeks a declaration is

not a 'cause of action' within the meaning of the limitations section. Non-liability is the negative of the

claim or cause of action with respect to which the declaration is sought. For purposes of the statute of

limitations non-liability is inextricably linked with that cause of action. So long as the claim can be made,

its negative can be asserted."). Thus, while Defendant's delay in bringing its breach-of-contract

counterclaim is fatal to that claim, Defendant will still be able to seek to develop evidence in discovery

regarding Plaintiff's purported breach of the Agreement that could be sufficient to keep Plaintiff from

recovering on its claims. The court accordingly disagrees with Defendant that there is any inequity in its

dismissing the breach-of-contract counterclaim.

> b. *Declaratory judgment*

Defendant also sues Plaintiff seeking a declaratory judgment "to declare the rights and legal

obligations of [the parties] with respect to this controversy pursuant to N.C. Gen. Stat. § 1-253, and . . . [to]

enter a judgment that [Plaintiff] may not enforce the Agreement against [Defendant.]" [DE-11 at 21]

Plaintiff argues that Defendant's declaratory counterclaim: (1) must be dismissed under Rule 12(b)(1) as

moot by virtue of the First Litigation settlement agreement; and (2) must be dismissed under Rule 12(b)(6)

as untimely under N.C. Gen. Stat. § 1-52(1). [DE-15 at 5–6, 9–10]

As a threshold matter, in adjudicating claims for declaratory relief, federal courts apply the federal

Declaratory Judgment Act, 28 U.S.C. § 2201, rather than state analogues like N.C. Gen. Stat. § 1-253. *See*

*Bruno v. Casella Waste Sys.*, 616 F. App'x 20, 21 n.2 (2d Cir. 2015) (unpublished) ("Courts in this Circuit

and elsewhere . . . have concluded that the federal Declaratory Judgment Act, rather than an otherwise

15

applicable state declaratory judgment act, governs in diversity actions" (citations omitted)); *Recycling Equip., Inc. v. E Recycling Sys., LLC*, CIVIL ACTION NO. 5:14-CV-00056, 2014 U.S. Dist. LEXIS 171175, at *8–9 (W.D.N.C. Dec. 9, 2014) ("North Carolina's Declaratory Judgment Act is procedural and so is the Federal Declaratory Judgment Act, 28 U.S.C. § 2201. Therefore, although originally filed under N.C. Gen. Stat. § 1-253, this cause of action is treated as if it were filed under 28 U.S.C. § 2201. North Carolina substantive law will continue to govern the underlying claim." (internal citations omitted)). The court will accordingly construe Defendant's declaratory counterclaim as a claim brought under 28 U.S.C. § 2201. *Id.*

Moving on to Plaintiff's arguments, the court first rejects Plaintiff's Rule 12(b)(1) argument that the First Litigation settlement agreement bars the court from considering Defendant's declaratory counterclaim. As mentioned above, where a settlement agreement has previously disposed of a claim, a Rule 12(b)(1) motion to dismiss the claim invoking the settlement agreement must be granted. *Hart*, 2016 U.S. Dist. LEXIS 51485, at *7. However, the First Litigation settlement agreement contains a carveout setting forth as follows:

> [Defendant] expressly reserve[s] and do[es] not waive or release any claims or defenses that [Defendant] ha[s] or may have against [Plaintiff] that arise from or relate to workers' compensation ("WC") insurance for [Defendant's] employees, including but not limited to WC classification codes, WC certificates of insurance or other proof of workers' compensation insurance coverage, WC rates, WC withholdings, WC charges, WC reimbursements or audits related to the same.

[DE-15-1 at 2] The court concludes that Defendant's declaratory counterclaim seeking clarification of the parties' rights and obligations under the Agreement "arise[s] from or relate[s] to" the parties' agreement concerning worker's-compensation insurance, at least to the extent the court is asked to declare whether the parties abided their worker's-compensation-insurance-based obligations set forth within the Agreement.

16

The court accordingly concludes that it has subject-matter jurisdiction over Defendant's declaratory counterclaim, and rejects Plaintiff's Rule 12(b)(1) argument.[12]

However, because Defendant's breach-of-contract counterclaim is untimely, Defendant's declaratory counterclaim is also untimely. Under North Carolina law—applicable to this 28 U.S.C. § 2201 claim brought in diversity, *see Recycling Equip.*, *supra*—"declaratory judgment actions are subject to the applicable statute of limitations, which is the one that governs the substantive right that is most closely associated with the declaration that is being sought." *Chisum v. Campagna*, 376 N.C. 680, 719, 855 S.E.2d 173, 199–200 (2021). The *Chisum* court cited to *N.C. Farm Bureau Mut. Ins. Co. v. Hull*, 370 N.C. 486, 809 S.E.2d 565 (2018) for the proposition that "the three-year statute of limitations applicable to breach of contract actions govern[s] an action seeking a declaration concerning the extent of . . . rights under a policy of insurance." *Id.* Because Defendant's declaratory counterclaim seeks such a declaration—and indeed asks the court to declare that the Agreement is unenforceable because of Plaintiff's purported breach [*see* DE-11 at 21]—it is time-barred for the same reasons that Defendant's breach-of-contract counterclaim is time-barred described above in Section III(a), and Defendant's declaratory counterclaim will therefore also be dismissed pursuant to N.C. Gen. Stat. § 1-52(1) and Rule 12(b)(6).

But the court notes that this ruling will have little practical effect upon Defendant's ability to secure the declaration that it seeks. Because (1) Defendant's declaratory counterclaim essentially asks the court to rule that its contract-based defenses to Plaintiff's claims are viable, and (2) as Defendant itself notes in its brief, Defendant "asserts the illegality of the Agreement . . . both as an affirmative defense as well as a Counterclaim" [DE-18 at 16; *see also* DE-11 at 9–13 (affirmative defenses)], Defendant's contractual

---

[12] To the extent that the declaration sought by Defendant is broader than the carveout, the court's conclusion that the declaratory counterclaim is untimely means that its conclusion to exercise jurisdiction over that claim makes no practical difference.

17

defenses remain in play, since defenses are not subject to statutes of limitations, as discussed above. *See supra* Section III(a); *Western Pac. R.R. Co.*, 352 U.S. at 72.

      *c.  N.C. Gen. Stat. § 75-1.1*

Defendant next counterclaims against Plaintiff under N.C. Gen. Stat. § 75-1.1, North Carolina's Unfair and Deceptive Trade Practices Act ("NCUDTPA"). [DE-11 at 21–22] Plaintiff argues that Defendant's NCUDTPA counterclaim must also be dismissed under Rule 12(b)(6) as untimely. [DE-15 at 6–8]

N.C. Gen. Stat. § 75-1.1 claims are "barred unless commenced within four years after the cause of action accrues." N.C. Gen. Stat. § 75-16.2. "[A] cause of action for unfair and deceptive trade practices . . . accrues when the right to institute and maintain a suit arises[,]" i.e., "when the violation occurs." *Hinson v. United Fin. Servs.*, 123 N.C. App. 469, 475, 473 S.E.2d 382, 386–87 (1996) (internal quotation marks and citations omitted). Under North Carolina law:

> To state a claim for unfair and/or deceptive trade practices, the plaintiffs must allege that
>
> > (1) the defendants committed an unfair or deceptive act or practice, or an unfair method of competition,
> >
> > (2) in or affecting commerce,
> >
> > (3) which proximately caused actual injury to the plaintiffs or to the plaintiffs' business.

*Walker v. Sloan*, 137 N.C. App. 387, 395, 529 S.E.2d 236, 243 (2000) (internal quotation marks and citations omitted). Defendant's NCUDTPA counterclaim therefore accrued once it suffered an "actual injury" proximately caused by an unfair or deceptive trade practice committed by Plaintiff, but not before. *See Ellis v. Smith-Broadhurst, Inc.*, 48 N.C. App. 180, 184, 268 S.E.2d 271, 273–74 (1980) ("As an essential element of plaintiff's cause of action, plaintiff must prove not only a violation of [N.C. Gen. Stat. §] 75-1.1 by the defendants, but also that plaintiff has suffered actual injury as a proximate result of defendants'

18

misrepresentations."); *Pearce v. Am. Def. Life Ins. Co.*, 316 N.C. 461, 471, 343 S.E.2d 174, 180 (1986) (following *Ellis*).

The logical first step in determining when Defendant's NCUDTPA claim accrued is to determine when the relevant "actual injury" to Defendant is alleged to have taken place. Defendant alleges that Plaintiff's "unfair and deceptive trade practices have proximately caused damage to [Defendant], including but not limited to, [1] charging [Defendant] for insurance coverage it did not receive and [2] exposing [Defendant] to liability for failure to maintain workers' compensation coverage." [DE-11 at 22] The latter purported injury is not a plausibly-alleged "actual injury" since, as discussed above, Defendant has not alleged that it ever had any insurance claim denied or otherwise incurred any actual liability because of Plaintiff's alleged failure to maintain coverage. *See supra* note 7. Only the former alleged injury therefore remains: unwarranted charges for insurance coverage not provided. Even if fees paid by Defendant to satisfy such charges were "actual injur[ies]" within the meaning of *Walker*, they were the result of a mere breach of contract, which the North Carolina Supreme Court has said is insufficient to implicate N.C. Gen. Stat. § 75-1.1. *Bumpers v. Cmty. Bank of N. Va.*, 367 N.C. 81, 88, 747 S.E.2d 220, 226 (2013) ("Neither an intentional breach of contract nor a breach of warranty constitutes a violation of Chapter 75." (quotation marks, ellipsis, and citation omitted)).

Defendant has therefore failed to allege any actual injury proximately caused by an unfair and deceptive trade practice under North Carolina law. While this means that no NCUDTPA claim ever accrued, it also means that Defendant's NCUDTPA counterclaim is not plausible within the meaning of *Twombly*. The court accordingly concludes that Defendant's NCUDTPA counterclaim must be dismissed pursuant to Rule 12(b)(6) as well.

### d. *Unjust enrichment/*quantum meruit

Defendant finally counterclaims against Plaintiff seeking to claw back as unjust enrichment the fees Defendant allegedly paid to Plaintiff pursuant to the allegedly-unenforceable Agreement. [DE-11 at 22–23] Plaintiff argues that this counterclaim must be dismissed under Rule 12(b)(6) as untimely. [DE-15 at 5–6]

Under North Carolina law, claims for unjust enrichment are governed by N.C. Gen. Stat. § 1-52(1), which applies to actions "[u]pon a contract, obligation or liability arising out of a contract, express or implied[.]" *Housecalls Home Health Care, Inc. v. State*, 200 N.C. App. 66, 70, 682 S.E.2d 741, 744 (2009) ("the statute of limitations for bringing a cause of action for breach of contract, conversion, or unjust enrichment is three years." (citing N.C. Gen. Stat. §§ 1-52(1) & -(4)); *see Dean v. Mattox*, 250 N.C. 246, 251, 108 S.E.2d 541, 546 (1959) ("an action to recover for money had and received, under the doctrine of unjust enrichment, is an action on implied contract"). "The cause of action accrues when the wrong is complete, even though the injured party did not then know the wrong had been committed." *Housecalls*, 200 N.C. App. at 70, 682 S.E.2d at 744 (quotation marks and citation omitted).

Since Defendant alleges that it terminated the Agreement in January 2017, and last paid Plaintiff pursuant to the Agreement in December 2016 [DE-11 at 19 (alleging that Plaintiff "invoiced and [Defendant] paid for workers' compensation coverage for the October through December 2016 period")], the court concludes that Defendant's unjust-enrichment counterclaim accrued more than three years before Defendant brought its unjust-enrichment counterclaim, which is therefore untimely and will be dismissed pursuant to N.C. Gen. Stat. § 1-52(1) and Rule 12(b)(6).

20

## IV.    Conclusion

For the foregoing reasons, Plaintiff's motion is GRANTED.


SO ORDERED this the _____ day of _____, 2021.




RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE